W. M. WILLIAMS, EXECUTOR, ET AL. v. EDWARD EMBERSON.

Decided January 20, 1900.

**1. Relinquishment by Heir Held a Deed.**

A receipt and relinquishment by an heir of all interest inherited by him in the community estate of his mother will be construed as a conveyance when necessary to carry out the intention of the parties.

**2. Limitation—Suit by Heir—Engrafting Parol Trust.**

A suit by an heir to recover an interest inherited by him in realty, brought on the theory that a certain instrument, executed by him in the form of a release of all his interest, created a trust by virtue of an accompanying parol agreement, is not primarily an action to set aside the instrument, and is therefore not subject to the statute of limitations applicable to such an action.

**3. Parol Trust—Deed Absolute—Limitations.**

Engrafting a parol trust upon a deed absolute on its face does not destroy the instrument, and limitation does not run against a trust until there has been a repudiation of it.

**4. Consideration—Advancements—Heir Not Estopped.**

Where the consideration of a conveyance of release executed by an heir to his father was advancements made to the heir out of the community estate of the father and mother, but not to the full amount to which, as heir of the mother, he was entitled, and it was mutually understood that the heir still retained an interest in said

estate equal to the balance due him as heir of the mother, and the object of the conveyance was to place the title to such interest in the father in trust for such heir, the latter is entitled to recover such balance of interest from the father's estate.

### 5. Advancements to Heir—Presumption.

A gift by a father to one of several children is presumed to be an advancement to such child, to be accounted for by him in the final distribution of such parent's estate. This presumption may be rebutted by evidence showing a contrary intention on the part of such parent; but parties who hold by devise or purchase from the father can not, it seems, set up such defense in an action by such child to recover from the father's estate an interest inherited by plaintiff from his mother.

### 6. Same—Consideration Sufficient.

Where an heir who has received advancements from the community estate of the father and mother less than the amount he is entitled to as such heir, executes to the father a release of all his interest as such heir, agreeing that such advancements shall be in full consideration therefor, they will constitute an adequate consideration for the release.

### 7. Same—Same—Separate Estate of Mother.

An advancement made to such heir by the mother out of her separate property would constitute a voluntary gift, and could not be made the consideration of such conveyance of release by the heir to the father after the mother's death.

### 8. Election by Heir—Mortgaging Devised Property.

The act of an heir in mortgaging property devised to him in his father's will is not to be held an election to take under the will where he did not know, when executing the mortgage, that such act was to be considered an election, and expressly stated to the mortgagee that he intended to sue the estate for the interest inherited by him through his mother.

### 9. Same.

So, the execution by the heir, after he had instituted suit for his interest as heir, of a mortgage upon the interest that he might recover in the suit, or which he should receive under the will, did not constitute an election to accept under the will.

### 10. Pleading by Heir—Amendment—Departure—Election of Remedies.

Where plaintiff's original petition in an action against his father's estate sought to recover the value of the interest plaintiff had inherited in the community property through his mother, and his amended petition prayed that his interest in such property as was on hand be set apart to him, and for judgment for balance of his claim, there was no such departure in pleading as amounted to an election of remedies.

### 11. Heir's Right Against Community Survivor.

Where community lands have been sold by the father as survivor in community, the heirs are entitled, on partition, to be remunerated for their share of the purchase money by having an allowance made them therefor out of the father's interest in the lands remaining unsold.

### 12. Same—Claim for Value of Personalty Satisfied Out of Realty—Proof of Value.

Where a survivor in community has appropriated the personalty of the common estate, an heir whose claim for the value of his share of the personal estate is not barred by limitations is entitled to have the amount thereof set aside to him out of the realty still on hand, and to show the value of any community property disposed of by the survivor at the time of its disposition.

### 13. Community Estate—Proof by Heir.

In an action by an heir against the father's estate to recover plaintiff's interest in the community estate of the father and mother, plaintiff, in order to show what lands were community property, and their value, may give in evidence the inventory filed in the probate court by the father's executors.

### 14. Evidence—Suit Against Executors—Transactions with Decedent.

Where an heir sues the father's estate to recover his interest in the community property inherited through the mother, and seeks to avoid a release to the father of such interest, and the defendant executors assert title in the estate to all the

property, plaintiff is disqualified under the statute from testifying as to his transactions with the father in the execution of the release, and his (plaintiff's) intentions therein. Rev. Stats., art. 2302.

**15. Same—Evidence of Other Releases.**

Where an heir sues the father's estate and seeks to avoid a release by him to the father of his interest, through his mother, in the community estate, other releases executed to the father by the other heirs are not admissible in evidence.

APPEAL from Grayson. Tried below before Hon. DON. A. BLISS.

*Davis & Garnett, E. C. McLean*, and *Bowlin & Williams*, for appellants.

*Galloway & Templeton* and *Hazlewood & Smith*, for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—The appellee, Edward Emberson, brought this suit in the District Court of Grayson County, Texas, on the 5th day of August, 1897, against the appellants, W. M. Williams, Jule Gunter, and John Emberson, as the executors of his father, Elijah Emberson. He also joined as defendants his sister Inez Thomas and her husband M. H. Thomas, his sister Edna Stiff and her husband Glenn Stiff, his sister Florence Dumas and her husband Louis Dumas, and his half sister Jule Emberson, daughter of Elijah Emberson by a subsequent marriage, and her guardian Mulkey. Some other parties were also joined as defendants, but as they recover in the court below, their names are omitted here. Appellee sued to recover his interest in the community property of Elijah Emberson and his wife, Susan Emberson, inherited from his mother upon her death, which occurred November 29, 1886. The cause was tried in December, 1898, and went to the jury upon special issues upon which the court rendered a judgment in favor of the appellee, from which the executors of Elijah Emberson and the guardian of Jule Emberson have prosecuted this appeal. Both parties have assigned errors.

Elijah Emberson and Susan Emberson were husband and wife. On the 29th day of November, 1886, Susan Emberson died intestate, leaving surviving her the following children, being the children of herself and the said Elijah Emberson, to wit: Florence, who married Louis Dumas; Inez, who married Henry Thomas; Mavitt, who married George Light; Edna, who married Glenn Stiff; and the plaintiff, Edward Emberson.

At the time of the death of Susan Emberson she and the said Elijah Emberson owned a community estate consisting of real estate and personal property exceeding in value $100,000.

In January, 1887, Edward Emberson executed the following instrument and delivered the same to Elijah Emberson:

"*State of Texas, Grayson County.*—Know all men by these presents, that I, Edward Emberson, of Grayson County, Texas, and son and heir of Susan Emberson, deceased, have this day received of my father,

Elijah Emberson, of Grayson County, Texas, the sum of $8482.90, the same being the full portion of the estate of my mother, the said Susan E. Emberson, to which I was entitled in the division of the community property of the said Susan E. Emberson, and in consideration of said sum of $8482.90. I hereby relinquish and release unto the said Elijah Emberson all my claim against all property of whatsoever description held as community property of the said Elijah Emberson and Susan E. Emberson, unto the said Elijah Emberson, his heirs and assigns forever.

"In testimony whereof, witness my hand, this January 24, 1887.
                     (Signed)      "EDWARD EMBERSON."

This instrument was duly acknowledged by Edward Emberson on the 26th day of April, 1887.

In this suit plaintiff seeks to recover the interest inherited by him in the community estate of his mother. The pleadings of the plaintiff sought to avoid the effect of this instrument and engraft a trust thereon, alleging: (1) That it was executed upon an understanding or agreement between plaintiff and his father, Elijah Emberson, to the effect that the said Elijah was to have the management and control of the community estate of himself and of Susan Emberson, deceased, with the right to dispose of his (Elijah Emberson's) interest in said community property without the necessity of qualifying as survivor of such community estate; (2) that it was executed for the purpose of securing Elijah Emberson and indemnifying him against loss by his having to settle a certain judgment obtained against Edward Emberson by Scaling & Tramling in the United States Circuit Court; (3) that said instrument was wholly without consideration. The third ground was verified by plaintiff's affidavit.

The court in its charge instructed the jury that there was no evidence before them that said instrument was intended by the parties to be a mortgage, or to enable the said Elijah Emberson to go on and manage the community estate of himself and his deceased wife, Susan Emberson, without taking out community administration.

The first assignment of error complains of the construction placed upon the above instrument by the trial court. The instrument is a relinquishment to Elijah Emberson by Edward Emberson of all the interest inherited by him in the community estate of his mother. We have held that a deed of relinquishment will be construed as a conveyance when necessary to carry out the intention of the parties. Smith v. Cantrell, 50 S. W. Rep., 1081; 20 Am. and Eng. Enc. of Law, 1 ed., 746.

The above instrument, construed according to its face, had the effect to place the title of the property inherited by plaintiff from his mother in her community estate, in Elijah Emberson. This, in effect, is the construction placed on the same by the trial court, and there is no merit in the first assignment of error.

Again, it is contended by appellants in their eighth assignment of

error that the court erred in refusing a requested charge directing the jury to return a verdict for the executors, because there was no sufficient evidence authorizing the jury to find that the receipt and conveyance by plaintiff to his father was not binding upon him.

There is evidence in the record which, in our opinion, authorized the submission to the jury of the issue as to the consideration of the instrument, and the object and intention of the parties to it at the time it was executed. We overrule the appellants' eighth assignment of error. The sixteenth assignment of error is on the same line, and is overruled.

It is contended that this is not primarily a suit for land, but to set aside said deed of release, and that such cause of action is barred by the statute of limitations. We are of opinion that such is not the object of the suit. The suit does not seek to set aside or destroy the deed of release. It does not seek to show that the release is without consideration, and was not intended to be an absolute conveyance, but was intended to place the title of the property in Elijah Emberson, in trust for plaintiff. It has been held that a parol trust may be engrafted upon a deed absolute upon its face. Grace v. Hanks, 57 Texas, 15; Gibson v. Fifer, 21 Texas, 261; Stubblefield v. Stubblefield, 45 S. W. Rep., 966. Such a trust does not destroy the instrument. If the instrument was intended to create a trust in favor of Edward Emberson, then the statute of limitations would not run against him until there had been a repudiation of such trust by Elijah Emberson or his representatives. Neyland v. Bendy, 69 Texas, 711; Wingate v. Wingate, 11 Texas, 430; Kennedy v. Baker, 59 Texas, 150.

Again, appellants insist that if there was a consideration for the release, but such consideration was inadequate and not the full value of plaintiff's interest in the land, yet the instrument would constitute a valid release. This would be true unless it was understood by the parties thereto at the time of its execution that the grantor still had an interest in the land, and the object of the instrument was to put the title to such interest in the grantee in trust for the grantor. In other words, if the consideration of the instrument was advancements made to Edward Emberson out of the community estate of his father and mother, but the same were not the full amount to which he, as an heir of his mother, was entitled, and it was understood at the time by the parties to the instrument that plaintiff still retained an interest in said estate equal to the balance due him as an heir of his mother, and the object and intention of said release was to place the title to such interest in the grantee in trust for the grantor, plaintiff would be entitled to such interest.

Appellants, under their fifteenth assignment of error, complain of the action of the court in giving a special charge requested by appellee, substantially as follows: "You are instructed that any property transferred and delivered to Ed. Emberson by his father and mother before the death of his mother, and intended to be a pure gift by his said father

and mother to him, could not constitute any part of the consideration of the instrument of release dated April, 1887."

We understand the law to be, where there are several children, a gift by a parent to one of the children is presumed to be an advancement to such child, to be accounted for by him in the final distribution of the parents' estate. This presumption may be rebutted by evidence showing a contrary intention on the part of the parent. 1 Am. and Eng. Enc. of Law., 2 ed., 771, and note 7; Sparks v. Spence, 40 Texas, 693; Lott v. Kaiser, 61 Texas, 665.

It does not follow that the defendants could, in this proceeding, set up advancements, as such, to defeat the plaintiff's right to property inherited by him from his mother, and to which he took title upon her death. The defendants' title is deraigned through the will of Elijah Emberson, and they have no better title than he had. It has been held in a suit between one who purchased after the mother's death the interest of a father in a community estate, and the children who deraigned title as heirs of their mother, that such purchaser could not call upon the children to account for advancements made to them during the lifetime of their mother. Wilson v. Helm, 59 Texas, 680.

If there was an agreement between plaintiff and his father, Elijah Emberson, that the advancements, if any, made to plaintiff out of the community estate of his father and mother should be charged up against the interest inherited by him from his mother in her community estate, and such agreement was carried into effect, plaintiff would be bound thereby. If to carry out such an agreement plaintiff executed the release above set out in full settlement of the interest inherited by him from his mother in her community estate, then such settlement should be upheld.

In this connection the defendants requested a special charge as follows: "If the plaintiff agreed with his father that the advancements made to him prior to the death of his mother, whether from the community property or whether from his mother's separate property, should be accounted for by the plaintiff in the settlement of the plaintiff's community property which he inherited from his mother, and said advancements were the consideration, in whole or in part, for the receipt and conveyance from the plaintiff to his father, dated January 24, 1887, then said receipt and conveyance is binding upon the plaintiff, and he can not avoid the same upon the ground that he has received no consideration." The appellee contends that there was no evidence authorizing the submission of this charge. In this conclusion we do not concur. The entry made and signed by plaintiff in the book kept by his father showed that he had received from his father and mother certain lands and personal property amounting to $7221. The instrument executed by him above set out acknowledges the receipt of $8482.90, being in full of his portion of the estate of the mother to which he was entitled, and in consideration thereof, relinquishes to his father all interest in his mother's community estate. There was other evidence on the same

line, which, taken as a whole, tended to show such an agreement, and was sufficient to authorize the submission of this issue to the jury. The charge as requested was not correct in so far as it sought to make advancements made by the mother out of her separate estate a part of the consideration of said instrument. An advancement made by the mother out of her separate property would constitute a voluntary gift by her to her son. Such a gift could not be made the consideration of a conveyance by the son to his father after the mother's death. Wilson v. Helm, supra. The requested charge is not correct in so far as it sought to make a gift by the mother out of her separate estate a part of the consideration of the relinquishment by plaintiff to Elijah Emberson.

The charge should have been corrected in this respect. As the court had failed to charge on this phase of the case, the requested charge was sufficient to call the court's attention to this issue and require its submission to the jury, and the court's failure in this respect was error. In this connection the record shows that the court, after the jury had returned their verdict, did find that the plaintiff, Edward Emberson, received from the community estate of his father and mother, as an advancement from them, personal property consisting of money and other personal property in the sum of $4521.90.

The appellants further contend that the special issues submitted to the jury were so framed as to exclude from their consideration advancements made to plaintiff during the lifetime of his mother. There is some force in this criticism. While said special charge does not expressly restrict the jury, yet, we think that as plaintiff contended in the court below, and now here contends, that advancements made to plaintiff out of the community estate of his father and mother, during the lifetime of his mother, can not be considered for any purpose, the jury may have been misled by the wording of said special issue.

Appellants' sixth assignment of error complains of the action of the court in refusing the following special instruction requested by them: "By the mortgage of G. E. Light and by the mortgage of C. B. Dorchester, trustee for Lee Woods, beneficiary, which have been read in evidence, plaintiff claimed and assumed to own the lands demised to him by the will of his father, Elijah Emberson, and thereby elected to take under said will, and you will therefore find for defendants."

On May 26, 1897, the plaintiff, Edward Emberson, executed and delivered to G. E. Light a mortgage whereby he gave a lien to Light on all the property that had been devised and bequeathed to him (Emberson) by the terms of his father's will, which mortgage he executed and delivered for the purpose of securing Light against any loss by reason of the latter having become his surety on a certain note.

The mortgage executed to Light included property which plaintiff would not have received except for the will. It is true that had his father died intestate he would have inherited an interest therein, but he would not have inherited so great an interest as was bequeathed to him by the will.

The evidence shows, and the jury so finds, that the plaintiff did not know at the time he executed the mortgage that thereby he elected to accept under the will. His intention was not to accept under the will, and he at the time told G. E. Light, the mortgagee, that he intended to sue for his interest in the property inherited by him from his mother. When the note matured plaintiff discharged the mortgage. Under the above facts, did the act of plaintiff in executing the mortgage to G. E. Light on the property bequeathed to him by his father's will constitute an election upon his part under said will?

In the case of Carroll v. Carroll, 20 Texas, 732, it was held that the wife, who was a legatee and the executrix of her husband's will, and who had returned an inventory of her husband's estate, showing all the property as belonging to his estate, was not thereby concluded from afterwards asserting her community right to one-half of the property so inventoried by her. To the same effect is Philleo v. Holliday, 24 Texas, 38.

It is held that where a legatee, by the terms of the will, is put to an election as to whether he will accept under its terms, if he assent to the will and sells a part of the property given by the will and receives payment therefor, such action on his part will be held an election to take under the will. Grace v. Gregg, 88 Texas, 552; Rogers v. Trevathen, 67 Texas, 406; Butler v. Smith, 85 Texas, 126.

We have not been referred to any case by the learned counsel for appellants—although they have shown great research in briefing this case—where it was ever held that the single act of executing a mortgage by a legatee on property bequeathed to him, and which he would not have taken except for the will, has been held to constitute an election on his part to accept under the will. In a case decided by the Court of Chancery of New Jersey, the following language is used: "What acts of acceptance or acquiescence are sufficient to constitute an election can not be designated with sufficient precision to justify a general rule. Each case, as it occurs, must be governed by its own peculiar circumstances. The general questions are, whether the parties acting or acquiescing were cognizant of their rights; whether they intended to make an election; whether they can restore the individuals affected by their claim to the same situation as if the acts had never been performed; or whether their inquiries are precluded by the lapse of time."

In this case, as before stated, it is shown that at the time of executing the mortgage the legatee did not know that such an act would constitute an election on his part, and he expressly stated to the mortgagee that he intended to sue for his interest in the property inherited by him from his mother; and it is further shown that the title and possession of the executors has in no way been interfered with by the execution of such mortgage. The plaintiff, under the facts as shown, did not, by the execution of said mortgage, elect to accept under said will. In support of these views reference is made to the following authorities: Herm. on

Estop., secs. 1028, 1029; Carroll v. Carroll, 20 Texas, 732; Scoby v. Sweatt, 28 Texas, 730; Mayo v. Tudor's Heirs, 74 Texas, 473; English v. English, 3 N. J. Eq., 509, same case, 29 Am. Dec., 73.

The execution of the mortgage to Dorchester, after the institution of this suit, on the interest that he might recover in the suit, or which he should receive under the will, did not constitute an election to accept under the will. There was no error in refusing the special charge requested, and hence we overrule the sixth assignment of error.

The appellants' thirty-ninth assignment of error complains of the action of the court in overruling their demurrer to that part of plaintiff's first amended original petition seeking to recover compensation for the community lands disposed of by Elijah Emberson, by having an equivalent amount of land set apart to him out of the lands on hand, because the same was a departure from the original petition, and by the original petition plaintiff had elected to pursue his legal remedy to recover the value of the lands so disposed of in money, and he thereby waived his equitable remedy, if any, in partition.

The case was tried upon the first amended original petition, which sought to recover an undivided one-tenth in the community lands on hand at the death of Elijah Emberson, and also an additional interest therein equal to the plaintiff's supposed interest in the community lands disposed of by Elijah Emberson in his lifetime. The original petition, filed August 25, 1897, alleged, as in the amended petition, the amount of land and personal property on hand at the time of the death of Susan Emberson, and the amount of land and personal property on hand at the death of Elijah Emberson, and that the remainder of the property, real and personal, that is, all except that which was on hand at the death of Elijah Emberson, had been sold by said Emberson after the death of his wife, Susan, and the proceeds appropriated to his own use, which property so disposed of amounted in the aggregate to $104,-562.36, and that the plaintiff was entitled to recover from the estate of Elijah Emberson one-tenth of the value of the community property so disposed of by Elijah Emberson after the death of his said wife, Susan. That by reason of the facts stated, plaintiff was entitled to recover against said estate the sum of $10,456.23, and that said estate was justly indebted to him in said sum, and that the same was due and unpaid. Wherefore the plaintiff prayed that he be decreed an interest in said community property on hand, and that he have judgment for his debt, and decree of partition, etc. The defendants excepted to that part of the amended petition seeking to recover from the lands on hand at the death of Elijah Emberson an amount equal to plaintiff's interest in the lands disposed of by Elijah Emberson in his lifetime, for the reasons set out in the above assignment of error. The court overruled this exception. In this there was no error. The original petition sought to recover plaintiff's interest inherited by him from his mother in her community estate. The amended petition set up the same matters in a different form, and sought the same result. There was no such depart-

ure in the amendment as amounted to an election of remedies. White v. Cole, 87 Texas, 500; Wilson v. Carroll, 50 S. W. Rep., 222; Cattle Co. v. Boon, 73 Texas, 556.

The court did not err in overruling the defendants' exception to the petition based upon the ground that plaintiff was not entitled to recover compensation for lands sold by Elijah Emberson in his lifetime, in other lands then on hand and belonging to the community. The amended petition alleged that Elijah Emberson sold a portion of the community lands after the death of Susan Emberson, with the consent of plaintiff; under an understanding and agreement with plaintiff that plaintiff was to receive compensation for the lands so sold in other lands remaining on hand. If such an agreement was shown, then plaintiff would be entitled to have the same enforced.

Again, it is held that such a sale by the survivor would entitle the heirs, on partition, to be remunerated for their share of the purchase money by having an allowance made them therefor out of the father's interest in the land remaining unsold. Gilliam v. Null, 58 Texas, 298; Redding v. Boyd, 64 Texas, 478; Cheek v. Herndon, 82 Texas, 146.

In this connection we will notice the contention of appellee in his thirty-fourth cross-assignment of error and the proposition thereunder, that on the death of Susan Emberson plaintiff became the owner of an undivided one-fifth interest in and to her one-half of the community property, real and personal, and when his father appropriated the bulk of such property, plaintiff became equitably entitled to his interest out of the remainder. It was shown that at the time of the death of Susan Emberson there was a large amount of personal community property left, consisting principally of cattle, horses, and mules, notes and cash. This property was all disposed of by Elijah Emberson after the death of Susan Emberson. The executors pleaded the statute of limitations of two and four years to the right of plaintiff to recover. If Elijah Emberson, claiming to be the sole owner of the property, sold and converted the same, with knowledge of plaintiff, the statute began to run against plaintiff from the time of such sale and conversion. Neyland v. Bendy, supra; Wingate v. Wingate, supra; Kenneday v. Baker, supra.

If the statute had run against plaintiff's claim to such personal community property, the plaintiff could not complain of the action of the court in refusing to compensate him for his interest in such personal property by setting aside to him land in lieu thereof.

If the statute of limitations had not run, and all the community personal property was disposed of by Elijah Emberson after the death of said Susan Emberson, leaving the land described in the petition as the only property belonging to the community estate from which to compensate plaintiff for his interest in the community, then, on partition, the plaintiff would be entitled to have his interest in the community estate of his mother set aside to him in the land on hand. Gilliam v. Null, supra; Redding v. Boyd, supra; Cheek v. Herndon, supra; Johnson v.

Harrison, 48 Texas, 257; Murrell v. Mandelbaum, 85 Texas, 22; Furrh v. Winston, 66 Texas, 521.

Appellee's first cross-assignment of error complains of the action of the court in refusing to permit plaintiff to prove by the witness, W. M. Williams, and other witnesses, the value of the several tracts of land belonging to the community estate of Elijah Emberson and Susan Emberson, disposed of by Elijah Emberson after the death of his said wife, at the time they were so disposed of. The plaintiff, after the death of his mother, became a tenant in common with Elijah Emberson in the community lands of his said father and mother. The father, after the mother's death, having disposed of a part of such lands, we think the plaintiff was entitled to show the value of the lands at the time they were so disposed of. Again, the plaintiff, to show what lands were the community estate of Elijah Emberson and Susan Emberson, and their value, offered in evidence the inventory returned to and filed in the probate court by the executors of Elijah Emberson, deceased. Upon exception the court excluded this inventory, and plaintiff excepted, and assigned this action as error in his second cross-assignment. The evidence was admissible, and the court erred in excluding the same. Rev. Stats., arts. 1965-1981; Little v. Birdwell, 21 Texas, 597. We sustain the first and second cross-assignments.

In the third cross-assignment of error the appellee complains of the action of the court in sustaining the exceptions of defendants to the testimony of plaintiff, in which plaintiff proposed to testify as to the purpose and intention of the instrument executed by him to his father on January 24, 1887. Objection was made that this testimony was prohibited by article 2302 of the Revised Statutes. The court sustained the exception and refused to admit the testimony. The contention of appellee is, that this is an action for partition of the property of the estate of appellee's mother, and not an action in which judgment is sought against the executors or wards as such, and all of said property being devised under the will of Elijah Emberson, plaintiff was not disqualified under the statute from testifying in his own behalf as to any transaction that he had with his father in his lifetime.

This is a suit against W. M. Williams, Jule Gunter, and John Emberson, as executors of the will of Elijah Emberson, who have duly qualified. Elijah Emberson, by his will, bequeathed to his wife, Sallie Emberson, all of the property, and had also deeded her certain of the property during his lifetime.

Sallie Emberson made a will bequeathing her property to Jule Emberson, her daughter by Elijah Emberson, and Roy Snell, a child by a former marriage. Sallie Emberson died after the institution of this suit, and her will was duly probated. George Mulkey was appointed executor of her will, and was also appointed and qualified as guardian of the estate of the minors, Jule Emberson and Roy Snell. Other defendants were the children of Sallie Emberson by her first marriage.

The executors of Elijah Emberson answered by exceptions to the pe-

tition, general denial, pleas of the statutes of limitation of two and four
years to the community property disposed of by Elijah Emberson; also,
that Elijah Emberson held the land adversely under title, and claiming
the benefit of the three years statute of limitation.   They also set up the
deed of relinquishment from plaintiff to Elijah Emberson of his entire
interest in the property inherited by him from his mother, and further,
estoppel on the part of plaintiff to recover the land, because he had
elected to accept under the will of his father.   They also set up that
Elijah Emberson, in his lifetime, became surety on a note for plaintiff,
which plaintiff failed to pay, and the executors had been compelled to
pay the same, and they asked judgment against plaintiff for the amount
they had paid with interest.   George Mulkey, as executor of the will of
Sallie Emberson and the guardian for the minors, Jule Emberson and
Roy Snell, answered by exceptions and general denial, and by adopting
the answers of the said executors.   The other defendants filed formal
answers.   The petition alleged that the executors were in the possession
of the property and proceeding to administer the same under the will.
The executors assert title to the land in themselves as executors.   They
pray judgment for the land in their favor.   Judgment was rendered
against them as executors in favor of plaintiff for an interest in the
land.   Judgment was also rendered in their favor as executors against
plaintiff for certain money which they, as executors, paid for plaintiff
on the note executed by him and indorsed by his father.   In the absence
of the will, Jule Emberson would, as an heir of Elijah Emberson, have
inherited an interest in the property.

The testimony offered was clearly within the statute, and the court
did not err in sustaining the exception to the same.   Rev. Stats., art.
2302; Hubbard v. Cox, 76 Texas, 239; Parks v. Caudle, 58 Texas, 216.

We do not think the court erred in excluding the several deeds exe-
cuted to Elijah Emberson by his daughters in settlement of their re-
spective interests in their mother's estate, and hence overrule the fourth
cross-assignment of error.

The above remarks, we think, dispose of all the questions presented
and likely to arise upon another trial.

For the reasons above set forth, the judgment is reversed and cause
remanded.

*Reversed and remanded.*